FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUL -3  P 1: 27

CLERK'S OFFICE
AT . . . .

BY . . . . . . . . . . . . Y

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARC ALAN GREIDINGER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-14-1454 |
| JAMES W. ALMAND, *et al.*, | * | |
| Defendants. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Marc Alan Greidinger, a resident of Virginia, licensed to practice law in Maryland, has filed a three-count complaint against the Trustees[1] of the Client Protection Fund of the Bar of Maryland (the "Fund"), alleging violations of his right to due process under the Fourteenth Amendment of the United States Constitution and Sections 7(a) and 7(b) of the Federal Privacy Act of 1974, 5 U.S.C. § 552a, following the temporary suspension of his license to practice law in the state of Maryland.  This suspension has resulted from his failure to provide his Social Security number to the Fund.  Plaintiff brought the claims pursuant to 42 U.S.C. § 1983, seeking declaratory relief, specifically to obtain a permanent injunction against Defendants, preventing them from obtaining an order suspending any attorneys who have failed to provide Social Security numbers.  Plaintiff also seeks to obtain an order directing Defendants to take all necessary steps to terminate his temporary suspension.  Presently pending is Defendants' Motion to Dismiss (ECF No. 23) seeking to dismiss the complaint pursuant to

---

[1] Specifically, the Plaintiff sued Defendants James W. Almand, in his official capacity as the Chairman of the Client Protection Fund of Maryland, and the Trustees of the Client Protection Fund, in their official capacities:  William Myers, Cecelia Ann Keller, Leonard Shapiro, Patrick Roberson, Douglas Bregman, Donna Hill Stateon, and David Weiss.

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).  A hearing was held on June 25, 2014.

For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED.

## BACKGROUND

On a motion to dismiss, this Court accepts as true the facts alleged in Plaintiff's

complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  The Plaintiff is a

resident of Springfield, Virginia who was admitted to practice law in Maryland in 1990.

Complaint, 3-4, ECF No. 1.  Plaintiff remained a member in good standing of the Maryland Bar

until March 20, 2014, when his license to practice law in Maryland was temporarily suspended

due to his failure to provide his Social Security number ("SSN") to the Client Protection Fund of

the Bar of Maryland (the "Fund").  *Id.*  Plaintiff challenges Maryland Rules 16-811.5(a) and 16-

811.6(d), of the Rules adopted by Court of Appeals of Maryland pursuant to the authority

granted by Article IV § 18(a) of the Maryland Constitution.  Maryland Rules 16-811.5(a) and 16-

811.6(d) collectively require attorneys admitted in Maryland to provide their SSNs to the Client

Protection Fund, or be suspended from practice.  *Id.* at 2.  Plaintiff challenges the two Maryland

Rules under Section 7 of the Federal Privacy Act, 5 U.S.C. § 552a (Note), which makes it illegal

for a governmental agency to deny an individual any right, benefit, or privilege based on the

individual's refusal to disclose his or her SSN.  *Id.* at 2-3.

New attorneys, as applicants for admission to the Bar of Maryland, have been required to

disclose their SSNs since at least the early 1980s, as the Board of Law Examiners had a practice

of declining to process any applications that did not contain the number.[2]  Motion to Dismiss, 16,

ECF No. 23-3.  Beginning in 1993, the Maryland General Assembly directed the Fund to

compile a list of individuals who paid their annual fee and disburse the list to the Department of

---

[2] There is no evidence in the record as to whether the Plaintiff disclosed his SSN on his original Bar
application.  Nevertheless, the Fund is a separate entity from the Board of Law Examiners.

Assessments and Taxation. *See* Assessments and Taxation Department — Information — Health and Business Occupations, Professions 1993 Maryland Laws Ch. 351 (H.B. 1052). This list was compiled for the express purpose of "assist[ing] the Department of Assessments and Taxation in identifying new business within the State." *Id.* Within this list were to be included "[t]he federal tax identification number ("FTIN") of the person or, if the person does not have a federal tax identification number, the social security number of the person. *Id.*

In 1997, the Maryland General Assembly imposed additional obligations on "licensing authorities" to collect and report the SSN of applicants. *See* Md. Code Ann., Fam. Law § 10-119.3(b). Specifically, under Section 10-119.3(b) of the Family Law Article of the Annotated Code of Maryland, a licensing authority must "(1) require each applicant for a license to disclose the Social Security number of the applicant; and (2) reco rd the applicant's social Security number on the application." The Court of Appeals of Maryland was expressly designated as a licensing authority in 2007, making the Fund the instrument by which collection of SSNs would be implemented. Md. Code Ann., Fam. Law § 10-119.3(a)(3)(ii)(14). The duty of the Fund to collect and disclose SSNs was codified the next year in the Business Occupations & Professions Article, Section 10-313, adding the requirement that the list be provided to the Comptroller of Maryland in addition to the State Department of Assessments and Taxation. *See* Md. Code Ann., Bus. Occ. & Prof. § 10-313.

Following the implementation of Section 10-131, then-Chief Judge Robert M. Bell of the Maryland Court of Appeals sent a letter to all Maryland attorneys on August 13, 2009, directing them to provide the Fund with either their SSN or tax identification number on the form provided pursuant to Sections 10-119.3 and 10-131. Motion to Dismiss, 5, ECF No. 23-2. Within the letter, Chief Judge Bell noted that the disclosure was mandatory and that "the statutory authority

3

for this request is Md. Code Ann., Bus. Occ. & Prof. Art. § 10-313 and Fam. Law Art. § 10-119.3." *Id.* Chief Judge Bell also maintained that both the letter and the actions taken by the Maryland legislature were undertaken "in accordance with Section 7 of the Privacy Act of 1974." *Id.* Plaintiff argues that Maryland Rules 16-811.5 and 16-811.6 violate Section 7(a) of the Privacy Act of 1974, which provides:

> It shall be unlawful for any Federal, State, or local government agency to deny any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

Federal Privacy Act, § 7(a), Pub. L. No. 93-579, 88 Stat. 1896, 2194 (contained as amended in 5 U.S.C. § 552a (Note)).[3] The only exceptions under the Privacy Act are "any disclosure which is required by Federal statute" or "disclosure required under statute or regulation adopted prior to Jan. 1, 1975." Federal Privacy Act § 7(a)(2)(A) & Federal Privacy Act § 7(a)(2)(B), Pub. L. No. 93-579, 88 Stat. at 2194 (codified as amended at 5 U.S.C. § 552a (Note)). The Plaintiff asserts that neither exception applies in this case. Furthermore, Section 7(b) of the Privacy Act requires that "[a]ny Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory authority such number is solicited, and what uses will be made of it." Federal Privacy Act § 7(b), Pub. L. No. 93-579, 88 Stat. at 2194 (codified as amended at 5 U.S.C. § 552a (Note)).

Despite the measures taken to promote compliance with the various statutes, approximately 9,100 attorneys failed to disclose their SSNs in accordance with the letter sent by Chief Judge Bell. Motion to Dismiss, 16, ECF No. 23-3. The Attorney Grievance Commission

---

[3] Although not codified in the United States Code, Section 7 is contained in the "Historical and Statutory" note to 5 U.S.C. § 552a. Therefore, it is considered a "Statute at Large," 88 Stat. 1896, 2194, and is a law of the United States. *See Schwier v. Cox*, 340 F.3d 1284, 1288-89 (11th Cir. 2003) (reversing district court's conclusion that because Section 7 is uncodified, it is a "dead letter"; "the Code cannot prevail over the Statutes at Large when the two are inconsistent.").

of Maryland, through the Office of Bar Counsel, was the sole body tasked with ensuring that lawyers complied with the requirement. As a result of the sheer number of non-compliant attorneys, Bar Counsel was overburdened with enforcing the requirement through the Maryland Lawyers' Rules of Professional Conduct. Md. Rule 16-812. In addition, the judiciary was threatened with the divestment of one million dollars ($1,000,000) from the State's general fund appropriation after a legislative audit determined that the Maryland Child Support Enforcement Administration (CSEA) did not effectively use license suspensions as an enforcement tool. *See* Audit Report, Maryland Department of Human Resources, Child Support Enforcement Administration (September 2011) p. 12.[4]

In attempting to remedy this administrative and budgetary fiasco, the Maryland Rules Committee recommended, and the Court of Appeals adopted, Maryland Rule 16-811.5 ("Obligations of Attorneys") and Maryland Rule 16-811.6 ("Enforcement Obligations") on November 21, 2013. Motion to Dismiss, 16, ECF No. 23-3. Maryland Rule 16-811.5(a) requires every attorney admitted to practice in Maryland to "provide to the treasurer of the [Client Protection Fund] the attorney's Social Security number." Maryland Rule 16-811.6(d) requires the Trustees of the Fund to submit to the Court of Appeals a list of the names and account numbers of any attorneys who have failed to provide their Social Security numbers. Furthermore, under that provision, "the Court of Appeals shall enter a Temporary Suspension Order prohibiting each of [the individuals on the list] from practicing law in the State," Md. Rule 16-811.6(d). Notably, during the recommendation process, the Chair of the Standing Committee on Rules of Practice and Procedure, the Honorable Alan M. Wilner, retired Judge of the Court of Appeals, addressed the Privacy Act issues, stating "each of the statutory obligations [to disclose SSNs] is either required or expressly permitted by a Federal statute subsequent to the

---

[4] The Report is available at http://www.ola.state.md.us/Reports/Fiscal%20Compliance/CSEA11.pdf.

Privacy Act and thus falls within the express exception set forth in [Section] 7(a)(2) of the Privacy Act." Motion to Dismiss, 23, ECF. No. 23-3. Following the passage of these two rules, Chief Judge Bell wrote a letter on May 1, 2013 informing the Maryland General Assembly that the Judiciary had substantially complied with the audit recommendation so that the $1 million in withheld funds could be released. Motion to Dismiss, 9-10, ECF. No. 23-2.

Following the adoption of the new Rules, a number of attorneys still did not provide their SSNs. Motion to Dismiss, 9, ECF No. 23-2. In response, Chief Judge Bell sent two other letters to the delinquent attorneys in February and March of 2013 notifying them that they had not complied with the SSN disclosure obligation under Md. Code Ann., Bus. Occ. § 10-313 and Fam. Law § 10-119.3. *See* Motion to Dismiss, 7, ECF No. 23-2; Complaint, 2, ECF No. 1-4. Specifically, the letter in March maintained that any attorney who had thus far failed to provide his or her SSN could avoid disciplinary action by providing it within the next ten days. Complaint, 2, ECF No. 1-4.

Plaintiff responded to that letter on April 11, 2013, stating that he believed the mandatory disclosure provision of the new Maryland Rules violated the Federal Privacy Act. Complaint, 2, ECF No. 1-5. On February 10, 2014, Defendant James Almand, the Chairman of the Client Protection Fund, sent a Final Notification of Delinquency to the Plaintiff, stating that if he did not comply with the requirement within thirty days, he would be suspended from practice. Complaint, 2, ECF No. 1-6. Plaintiff again responded on March 11, 2014, reiterating his prior legal argument. Complaint, ECF No. 1-7. In addition to the letter, Plaintiff tendered his federal tax identification number along with a sealed envelope containing his SSN and a request that it not be opened until he was given an opportunity to present his objections. *Id* at 2. On March 14, 2014 the Fund sent a letter in response, stating that the Plaintiff's submission was not in

compliance, citing Maryland Rule 16-811.5(a)(1) for the first time. Complaint, 2, ECF No. 1-6. On March 20, 2014, Plaintiff's license to practice in Maryland was temporarily suspended by order of the Court of Appeals, along with forty-two other attorneys who did not provide their SSNs. Complaint, ECF No. 1-9.

The Plaintiff again wrote to the Court of Appeals, this time to Chief Judge Mary Ellen Barbera, asking that his suspension be delayed until his legal argument could be heard and ruled upon. Supplement to Complaint, 2-3, ECF No. 8-1. His request was not granted and his license remains suspended. As a result of his temporary suspension, Plaintiff has stopped representing existing clients, is barred from accepting referrals from the Bar, and is prevented from gaining new clients of his own. This suspension has been placed on Plaintiff both in Maryland and in Virginia, where he is admitted *pro hac vice* based on his Maryland admission.

In the three-count Complaint, Plaintiff has asserted causes of action pursuant to 42 U.S.C. § 1983 for violations of the Privacy Act and his right to procedural due process. Complaint, 7-9, ECF No. 1. In Count I, Plaintiff argues that his law license is a right, benefit, or privilege protected by law, and that Defendants acted under color of state law to deprive him of that license in violation of Section 7(a) of the Privacy Act. *Id.* at 7. In Count II, Plaintiff argues Defendants failed to abide by Section 7(b) of the Privacy Act by failing to provide information regarding (1) the statutory or other authority for the requirement that he provide his SSN and (2) the uses to be made of the information. *Id.* at 8. In Count III, Plaintiff further argues that his suspension, without a hearing before a neutral tribunal, violated his procedural due process rights. *Id.* In terms of remedies, Plaintiff seeks a declaration that the requirements in Maryland Rules 16-811.5 and 16-811.6 relating to suspension from law practice for failure to disclose his Social Security number without a hearing violated his procedural due process rights. *Id.* at 9.

Plaintiff also seeks equitable relief permanently enjoining the Defendants from enforcing the Maryland Rules provisions at issue, and directing the Defendants to take action that will reinstate his license to practice law in Maryland. *Id.* Plaintiff also seeks attorneys' fees and costs, and demands a trial by jury. *Id.*

Concurrent with the filing of his Complaint, the Plaintiff moved for a Temporary Restraining Order and Preliminary Injunction. Motion for a Temporary Restraining Order, ECF No. 2. The motion for a Preliminary Injunction was denied by this Court on May 2, 2014. Order Denying Motion for a Temporary Restraining Order, ECF. No. 14. This Court then set an expedited schedule for the briefing of dispositive motions.

Defendants have filed the subject Motion to Dismiss, or in the alternative, for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), alleging that Plaintiff failed to state a claim for which he is entitled to relief and failed to join a necessary party to the action. Motion to Dismiss, ECF No. 23. Defendants contend that Plaintiff fails to state a cognizable claim because the Privacy Act is superseded by other federal statutes contained in the Social Security Act, specifically the Welfare Reform Act, 42 U.S.C. § 666 ( "§ 666"), and the Tax Reform Act of 1976, 42 U.S.C. § 405 ( "§ 405"). *Id.* at 18-26. Defendants additionally claim that even if the Privacy Act is not superseded by these statutes, there is no private right of action under Section 7 of the Privacy Act for individuals. *Id.* With respect to the Rule 12(b)(7) argument, Defendants claim that only the Judges of the Maryland Court of Appeals — who are not parties in the pending litigation — can terminate the suspension and thus effect the remedy that Plaintiff seeks. *Id.* at 12-14. In seeking to refute Plaintiff's due process claim, Defendants contend that Plaintiff was not entitled to any hearing because there is no factual dispute that Plaintiff failed to disclose his SSN as required by Md. Rule 16-811.5(a)(1).

*Id.* at 27-30. Additionally, it is argued that Plaintiff had the opportunity to seek a review of the findings of the Fund under Md. Rule 16-811.10, but declined to do so. *Id.* at 29-30. Lastly, Defendants claim that the actions taken by the Fund did not violate Section 7(b) of the Privacy Act due to the fact that Chief Judge Bell's letter complied with the requirements to state the authority under which the SSNs were sought and their intended use. *Id.* at 30-32.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most

9

favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

Pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, a case may be dismissed for "failure to join a party under Rule 19." A Rule 12(b)(7) motion proceeds by a two-step inquiry. First, the court must ask "whether a party is necessary to a proceeding because of its relationship to the matter under consideration pursuant to Rule 19(a)." *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999) (citation and internal quotation marks omitted). If the party is necessary, it will be ordered into the action unless it destroys the court's jurisdiction. *Id.* Second, "[w]hen a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Owens-Ill., Inc.*, 186 F.3d at 440. The burden is on the moving party to "show that the entity who was not joined is needed for a just adjudication." *Riesett*, 2013 WL 5276553, at *2 (quoting *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005)). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Ill., Inc.*, 186 F.3d at 441.

## ANALYSIS

Defendant seeks to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). Pursuant to Rule 12(b)(6), Defendants have demonstrated that both 42 U.S.C. § 666 and 42 U.S.C. § 405 supersede the Privacy Act. Plaintiff concedes that if either § 666 or § 405 supersede the Privacy Act, this Court need not address the question of whether a

private cause of action lies under Section 7 of the Privacy Act.  In addition, because Plaintiff has failed to state claim under Rule 12(b)(6), the question of whether he failed to join a party necessary to the action under Rule 12(b)(7) is rende red moot.  This Court also finds that Defendants substantially complied with the mandates of Section 7(b) of the Privacy Act via the letter sent by Chief Judge Bell in 2009.[5]  Lastly, this Court finds that Plaintiff was not denied his Constitutional right to due process under the Fourteenth Amendment.[6]  For these reasons, Defendant's Motion to Dismiss will be granted.

I.    **Section 7(a)(1) of the Privacy Act is Superseded by Federal Statute**

Section 7(a)(1) of the Federal Privacy Statute states that "it shall be unlawful for any Federal, State, or local government agency to deny any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security number." Federal Privacy Act § 7, Pub. L. No. 93-579, 88 Stat. at 2194 (contained as amended in 5 U.S.C. § 552a (Note)).  While the construction of the statute is broad on its face, Sections 7(a)(2)(a) and

---

[5] Section 7(b) of the Federal Privacy Act mandates that "Any Federal, State, or local government agency which requests an individual to disclose his social security number shall inform that individual whether than disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it."  Plaintiff contends that the final two provisions — the authority and use provisions — were not met.  This argument, however, can be dismissed out of hand.  In terms of authority, the letter from Chief Judge Bell to all Maryland attorneys stated that "the statutory authority for this request is Md. Code Ann. Bus., Occ. & Prof. Art. § 10-313 and Fam. Law Art. § 10-119.3." Addressing the use of the information, the letter stated the information would be used "to assist the comptroller in determining whether each lawyer on the list has paid all undisputed taxes and unemployment insurance . . . ."  Accordingly, the statements in Chief Judge Bell's letter met any requirements imposed by Section 7(b).

[6] Plaintiff's due process claim is also clearly deficient, given that he had a litany of opportunities to raise his legal claims.  At the outset, Plaintiff was able to raise his arguments with the Fund in a number of letters.  These contentions were clearly considered, but ultimately denied.  Plaintiff was also entitled to a hearing regarding the determination of the Fund under Md. Rule 16-811.10, which states: "A person aggrieved by a final determination of the trustees may seek judicial review of the determination pursuant to Title 7, Chapter 200 of the Maryland Rules."  Although Plaintiff contends that this provision only applies to Md. Rule16-811.9, it is clear from a plain reading of the provision it also applies to Md. Rules 16-811.5 and 16-811.6.  Furthermore, Plaintiff was able to bring the action in this Court, which has jurisdiction to render a decision on Plaintiff's claim.  Accordingly, his due process claim is subject to dismissal.

7(a)(2)(b) significantly restrict its applicability. *Id.* Specifically, Sections 7(a)(2)(a) and 7(a)(2)(b) hold that the protection afforded by 7(a)(1) will not apply to "any disclosure which is required by Federal Statute" or "the disclosure of a social security number to any federal, state, or local agency maintaining a system of records in existence and operating before January 1, 1975." *Id.* Therefore, any federal statute which mandates the disclosure of Social Security numbers can implicitly or expressly override the protections afforded by the Federal Privacy Act. Far from just being a tool of the federal authorities, state and local entities acting pursuant to federal statutes have invoked this exception to the Federal Privacy Act. *See Stoianoff v. Comm'r of Motor Vehicles*, 107 F. Supp. 2d 439, 445 (S.D.N.Y. 2000); *see also Dittman v. State of California,* 191 F.3d 1020, 1026 (9th Cir. 1999). Because it is clear that Md. Rules 16-811.5 and 16-811.6 were enacted pursuant to 42 U.S.C. § 666 and 42 U.S.C. § 405 and both statutes clearly supersede the Federal Privacy Act, Plaintiff has failed to raise a cognizable claim which would entitle him to relief.

### A. 42 U.S.C. § 666 Supersedes the Privacy Act by Requiring the Collection of Social Security Numbers for Child Support Enforcement

Defendants contend that the Welfare Reform Act, 42 U.S.C. § 666 implicitly supersedes the Federal Privacy Act by authorizing state lawmakers to collect the social security numbers of individuals applying for professional licenses. Under § 666(a), the federal government mandated that in order to receive continued federal funding "each state *must* have in effect laws . . . to increase the effectiveness of the [child support enforcement] program the state administers." The collection and distribution of SSNs was primarily undertaken to create a computerized system that allowed state Child Support Enforcement Administrations ("CSEA") to effectively target and sanction individuals in arrearage. *See* 42 U.S.C. § 666(a)(3); *see also* Audit Report, Maryland Department of Human Resources, Child Support Enforcement Administration

12

(September 2011) p. 12.  As part of this holistic reform to child support enforcement, 42 U.S.C. § 666(a)(13) requires that the state implement "procedures requiring that the social security number of any applicant for a professional license, drivers license, occupational license, recreational license, or marriage license be recorded on the application."  In furtherance of restrictions to professional licenses, 42 U.S.C. § 666(a)(16) created procedures under which the "State has (and uses in appropriate cases) authority to withhold or suspend . . . professional and occupational licenses . . . of individuals owing overdue support or failing . . . to comply with subpoenas or warrants relating to paternity or child support proceedings."  Moreover, states were also required to enact procedures to afford the federal government "automated access" to the "records of occupational and professional licenses" for the purpose of enforcing child support payments.  42 U.S.C. § 666(19)(c)(1)(D).

In response to the requirements of § 666, in 1997 the state of Maryland immediately began reforming its means of data collection.  *See* 1997 Md. Laws Ch. 609.  This effort began with the enactment of Md. Code Ann., Fam. Law § 119.3(b) which mandated that all licensing authorities "*shall* (1) require each applicant for a license to disclose the social security number of the applicant; and (2) record the applicant's social security number on the application."  Moreover, under Md. Code Ann., Fam. Law § 119.3(c), the Maryland General Assembly authorized the Maryland Child Support Enforcement Administration ("CSEA") to request information from the licensing authorities concerning "any obligor in arrears in paying child support," and directed the licensing authorities to "periodically share its licensing database with the administration."  In terms of an enforcement mechanism, Md. Code Ann., Fam. Law § 119.3(e) permits the CSEA to request a licensing agency to "suspend or deny an individual's license," whereby the licensing authority "*shall* suspend . . . or deny an individual's license,"

subject to certain limitations.  In order to more fully comply with the stated purpose of § 666, the Maryland Rules Committee approved Md. Rules 16-811.5 and 16-811.6, mandating the disclosure of every attorney's social security number.

Plaintiff's sole contention is that § 666 does not apply to him because he is not an "applicant," as defined by § 666(a)(13).  Furthermore, Plaintiff claims that Congress intended to exclude attorneys admitted before 1997 from the disclosure requirement, under the theory that younger attorneys should have to bear the burden of implementation.  In response, Defendants claim that a narrow construction of the word "applicant" leads to an unsatisfactory outcome and the record shows no intent to create a "grandfather clause."  This Court finds the theory of Plaintiff without merit and contrary to the express intent of Congress.

Although Plaintiff's claim that the word "applicant" should be considered to include only those who are applying or reapplying for a license, the evidence points toward a broader definition of the term.  At the outset, it is clear that nothing in the Social Security Act or the Welfare Reform Act makes the distinction between "applicant" and "licensee" that Plaintiff now advances. *See* 42 U.S.C. § 666.  Rather, in direct opposition to the narrow definition advanced by Plaintiff, § 666(16) allows a state body to either "withhold *or suspend*" an individual's license for failing to comply with § 666(a)(13).  Taking these two provisions together, it is clear that a reading of the word "applicant" that excludes current license holders would render the threat of suspension under § 666(16) meaningless; applicants cannot be suspended, only those who already hold a license can.  This Court does not interpret the word "applicant" so narrowly in this context. *See, e.g., Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005) ("It is a classic canon of statutory construction that courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or

14

superfluous.") (citation omitted).  Moreover, this Court abides by the Supreme Court's recent admonition to avoid a "reading [that] would undermine—indeed, for all important purposes, would virtually repeal . . . the law's core provisions." *Abramski v. United States*, ___ U.S. ___, 134 S. Ct. 2259, 2267 (2014).

Furthermore, it is clear that under § 666 the federal government intended to implement a system which required complete disclosure of SSNs by every individual who is subject to a licensing authority in order to streamline CSEA enforcement.  As part of the Welfare Reform Act, which encompasses § 666, the House Report stated that with the implementation of § 666 "enforcement [will be] significantly strengthened to ensure that absent noncustodial parents provide financial support for their children." H. Rep. No. 104-651 at 5 (1996).  Furthermore, the Act seeks to establish "uniform state tracking procedures . . . established to catch deadbeat parents," which full disclosure of social security numbers would facilitate.  In terms of the mechanism itself, the federal government sought to "combin[e] the new databases, the SSNs from license applications, and the expanded [the Federal Parent Locator Service]" in order to "create 'a rapid response and automated mechanism to locate and withhold wages legally obligated for child support payments.'" H. Rep. No. 104-651 at 5 (1996); *Michigan Dep't of State v. United States*, 166 F. Supp. 2d 1228, 1232 (W.D. Mich. 2001) (quoting H.R. Rep. No. 104-651, at 1405 (1996)).  Even at a fundamental level, the exemption of individuals from a uniform enforcement mechanism reduces its overall effectiveness.  Indeed, the audit undertaken by the Maryland Department of Human Resources noted that the "Court [of Appeals] did not have social security numbers for approximately 9,800 attorneys" and that because of the lack of information "CSEA [was] precluded from performing automated matches of the licensing data."

Audit Report, Department of Human Resources, Child Support Enforcement Administration (September 2011) p. 12.

Significantly, Defendants also note that nearly every professional licensing agency in Maryland requires individuals to intermittently reapply. *See, e.g.,* Md. Code Ann., Bus. Occ. & Prof. § 2-311, § 3-309, § 4-310, § 5-311, § 6-310, § 6.5-312, § 7-308, § 8-307, § 11-408, § 13-308, § 14-314, § 16-3A-07, § 17-314, § 18-307. The sole exception to this all-encompassing reapplication scheme is the legal profession, as attorneys may renew their licenses indefinitely by paying the fees imposed by the Fund. Motion to Dismiss, 23, ECF No. 23-1. Therefore, up until the enactment of Md. Rules 16-811.5 and 16-811.6, attorneys who passed the bar before 1997 were the only group of licensed individuals who had been able to avoid mandatory SSN disclosure. *Id.* at 24. While Plaintiff may claim that Congress could have included "practitioners" as well as "applicants" in § 666, there is no basis to suggest that Congress intended to exempt a small number of licensed practitioners within a single profession from a mandatory disclosure regime. Rather, given that the payment of a fee is perhaps the closest thing to a reapplication procedure, the requirement placed on attorneys by Md. Rules 16-811.5 and 16-811.6 is more rationally characterized as a necessary remedial measure than an unwarranted intrusion into private information.

Moreover, Plaintiff's claim that § 666 was not meant to apply to individuals or impose the suspension of professional licenses is similarly misguided. While Plaintiff correctly states that both § 666(13) and § 666(16) are expressly directed at the state, the language of the statute obviously contemplates individual compliance with whatever state action is taken pursuant to the federal mandate. For example, § 666(13) mandates that the state enact legislation "requiring that the social security number of any applicant for a professional license . . . be recorded on the

application," making individual compliance absolutely essential.   As previously stated, individual compliance with the federal statute and its state incarnations have clear implications in terms of the effectiveness of the enforcement mechanism contemplated in § 666.  Moreover, the fact that the judiciary was threatened with funding divestments reflects that individual compliance is vital to state implementation of the federal requirement. *See* Motion to Dismiss, 4-7, ECF No. 23-4.

Likewise, Plaintiff's contention that the suspension of a professional license is not permitted under § 666 unless an individual is in arrearage only follows from an excessively narrow reading of the statute.  Regardless of whether the suspension is specifically required, it must first be noted that it would be impossible to impose a mandatory disclosure requirement without some sort of enforcement mechanism.  Given that § 666 does not specify a penalty for individual failure to disclose, it follows that the states were permitted to administer a reasonable penalty to force compliance with the federal statute.  Furthermore, the suspension administered in this case was temporary, bringing it within the ambit of what the statute otherwise permitted. *See* 42 U.S.C. § 666 (a)(5)(D)(iii); 42 U.S.C § 666(16).  In addition, the audit undertaken by the Maryland Department of Human Resources noted that the Court of Appeals was failing to adequately make use of an enforcement tool to suspend the licenses of attorneys.  Audit Report, Maryland Department of Human Resources, Child Support Enforcement Administration (September 2011) p. 12.

Therefore, interpreting § 666 to exclude Plaintiff clearly leads to a result that is patently inconsistent with the plain language of the statute or the expressed legislative intent.  Moreover, this Court summarily rejects any literal definition of "applicant" which would obviously thwart the purpose of the statute in creating a uniform enforcement mechanism. As a result, this Court

finds that § 666 supersedes Section 7 of the Privacy Act, rendering Plaintiff's Complaint irreparably deficient in terms of the Privacy Act claim.

### B. 42 U.S.C. § 405 Supersedes the Privacy Act by Authorizing the Collection of Social Security Numbers in the Administration of a Tax

Furthermore, Defendants note that the Tax Reform Act of 1976, 42 U.S.C. § 405 supersedes the Federal Privacy Act. Specifically, 42 U.S.C. § 405(c)(2)(C)(i) provides:

> It is the policy of the United States that any State (or political subdivision thereof) may, in the administration of any tax, general public assistance, driver's license, or motor vehicle registration law . . . utilize the social security account numbers issued by the Commissioner of Social Security for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State (or political subdivision thereof) or any agency thereof having administrative responsibility for the law involved, the [individual's] social security account number . . . .

Section 405(c)(2)(C)(v) also expressly supersedes previous legislation by holding that any provision of federal law inconsistent "with the policy set forth in clause (i) . . . shall on and after the date of enactment of this subparagraph [Oct. 4, 1976] be null, void, and of no effect." Courts have recognized the preeminence of the Tax Reform Act by holding that it supersedes the Privacy Act in a number of contexts. *See Peterson v. City of Detroit*, 76 F. App'x 601, 602 (6th Cir. 2003); *Stoianoff*, 107 F. Supp. 2d at 445. The United States Court of Appeals for the Sixth Circuit held, in a case concerning taxicab licensing, that "Section 7 of the Federal Privacy Act insofar as it relates to the privilege at issue in this case, has been superseded by a subsequent amendment to the Social Security Act, 42 U.S.C. § 405(c)(2)(C)(v)." *Peterson*, 76 F. App'x at 602. Moreover, the United States District Court of the Southern District of New York denied an action under the Federal Privacy Act regarding the disclosure of an individual's SSN to the Department of Motor Vehicles for driver's license purposes, stating "[b]ecause the uncodified

Section 7(a)(1) of the Privacy Act conflicted with the policy statement contained in the 1976 amendment to the Social Security Act, it would have become 'null and void and of no effect' as of October 1976, pursuant to 42 U.S.C. § 405(c)(2)(C)(v)." *Stoianoff*, 107 F. Supp. 2d at 445. This Court finds these decisions persuasive in their reasoning as to § 405's effect on Section 7 of the Privacy Act.

The legislative history, likewise, supports the contention that Congress considered the competing rationales for § 405 and the Federal Privacy Act before opting to include § 405(c)(2)(C)(v).  The Senate Committee on Finance did note that "Federal, State and local agencies may not deny any individual any rights . . . provided by law because such individual refuses to disclose his social security number," directly in keeping with Section 7 of the Privacy Act.  *See* S. Rep. No. 94-938 at 391 (1976).  However, the Committee advocated the passage of § 405, stating it "believe[d] that State and local governments should have the authority to use social security numbers for identification purposes when they consider it necessary for administrative purposes." *Id.* at 392.  Furthermore, in explaining the reform in its totality, the Committee maintained that the Act was amended "to establish the policy . . . that any State may use social security numbers for the purpose of establishing the identification of individuals affected by any law or program within its jurisdiction . . . [and] in addition, require any such individual to furnish his social security number." *Id* at 391-92.  The Committee also echoed the language in § 405(c)(2)(C)(v) by stating, "This amendment further provides that to the extent that any existing provision of Federal law is inconsistent with the policy set forth above, such provisions shall be null, void and of no effect." *Id.*

Plaintiff claims that because § 405(c)(2)(C)(i) states that SSN disclosure is required "in the administration of any tax," it necessarily follows that the agency administering the tax — in

this case, either the Maryland Comptroller or the State Department of Assessments and Taxation — must request the disclosure. He cites no authority for this proposition. It is clear that a plain reading of the statute does not support such a restrictive approach to SSN disclosure requests. Despite the fact § 405(c)(2)(C)(i) mentions "any agency having administrative responsibility for the law involved" in reference to entities to which an individual can be commanded to disclose his SSN, the statute also allows "the state (or any subdivision thereof)" to request a disclosure. *See* 42 U.S.C. § 405(c)(2)(C)(i). Given that the Court of Appeals sits at the apex of the Maryland judicial system, it would be impossible to contend that this disclosure was not requested at the behest of a subdivision of the state of Maryland. Moreover, Plaintiff's attempt to distinguish driver's licenses and professional licenses in an action under the Federal Privacy Act is not supported by the applicable case law. Plaintiff claims *Peterson* is distinguishable due to the fact the Sixth Circuit found that the taxi cab license could be denied in the "administration of any . . . drivers license . . . law," rather than in "the administration of any tax." *Peterson*, 76 F. App'x at 602. However, that decision solely cites § 405(c)(2)(C)(i), which lists the "administration of any tax" in conjunction with the "administration of any . . . driver's license." *See* 42 U.S.C. 405(c)(2)(C)(i). Without any statutory language differentiating the various instances in which § 405 can mandate the disclosure of an individual's SSN, there is simply no basis to make such artificial distinctions.

Finally, Plaintiff contends that the use of the word "may" in the statute renders it permissive and places it completely outside of the exception in Section 7(a)(2)(A) of the Privacy Act. The Plaintiff cites no authority adopting a reading that the State somehow would have the option not to require SSN disclosure in administering taxes. Meanwhile, the Sixth Circuit and the Southern District of New York persuasively reason that § 405 supersedes Section 7. It is

clear that § 405(c)(2)(C)(i) expressly permits the state to impose such a requirement under the color of federal law. Moreover, even if the statutory language is less than clear, the legislative history provides ample evidence that the Senate Finance Committee believed the needs of State and local governments trumped individual privacy in this context. *See* S. Rep. No. 94-938 at 392 (1976) ("the committee believes that State and local governments should have the authority to use social security numbers for identification purposes when they consider it necessary for administrative reasons."). Therefore, this Court finds that § 405 supersedes Section 7 of the Privacy Act.[7]

## II.    Private Right of Action Under Section 7 of the Federal Privacy Act

As this Court has already found that both 42 U.S.C. § 666 and 42 U.S.C. § 405 supersede Section 7 the Privacy Act, this Court need not decide whether there is a private cause of action for an individual under Section 7 . As both parties have stipulated, the question as to whether an individual has an implied private right of action under 42 U.S.C. § 1983 for the violation of Section 7 of the Federal Privacy Act is an open question in the Fourth Circuit. *See White v. Cain*, 2:10-CV-01182, 2011 WL 1087489, at \*7 (S.D. W. Va. Mar. 21, 2011) ("It is an open question in this circuit whether Section 7 of the Privacy Act "creates a right, privilege, or immunity enforceable under § 1983."); *Deeds v. Cnty. of Fairfax, Va.*, 151 F.3d 1028 (4th Cir. 1998) (unpublished). Moreover, application of the Privacy Act in reference to the suspension of

---

[7] Plaintiff also claims that because Md. Code Ann., Bus. Occ. & Prof. § 10-313(b) expresses a preference for the disclosure of the federal tax identification number as opposed to a SSN, the Privacy Act is not necessarily incompatible with 42 U.S.C. § 405. However, given that not every individual has a tax identification number and, almost without exception every individual has a SSN, the disclosure requirement is still necessary and within the ambit of § 405. Additionally, Plaintiff fails to note that Md. Code Ann., Fam. Law § 119.3 does not give individuals the option to disclose their tax identification number instead of their SSN. Rather, Md. Code Ann., Fam. Law § 119.3(b)(1) states a licensing authority will "require each applicant for a license to disclose the Social Security number of the applicant." Therefore the Federal Privacy Act is clearly in conflict with both Maryland provisions adopted pursuant to § 405.

the right to practice law appears to be an issue of first impression.  Accordingly, this Court heeds the sagacious words of Chief Judge Goodwin of the United States District Court for the Southern District of West Virginia in "not follow[ing] the child of calamity into the murky waters of Privacy Act jurisprudence." *White*, 2011 WL 1087489, at *7.  However, this Court notes that a private right of action has been recognized in certain circumstances.

Mainly, such rights have been found when fundamental rights are denied.  For example, in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003), the Eleventh Circuit held that a private right of action exists where plaintiffs' voter registration applications were denied after they refused to disclose their SSNs.  This holding was essentially echoed in *McKay v. Altobello*, No. Civ.A. 96-3458, 1997 WL 266717 (E.D. La. May 16, 1997), where the United States District Court for the Eastern District of Louisiana found that the Privacy Act precluded the Registrar of Voters from preventing an individual to vote based on the refusal to disclose his or her social security number.  Indeed, the Plaintiff in this case successfully challenged a Virginia law requiring the disclosure of his SSN on his voter registration application where the information would be made available to the public.  *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993).  Similarly, fundamental rights were at issue in *Szymecki v. City of Norfolk*, where Judge Morgan of the Eastern District of Virginia held that a private cause of action existed when a law enforcement officer twice demanded plaintiff's SSN, and threatened him with incarceration and withholding of his lawfully carried firearm for refusing to provide the information.  *See* No. CIV. 2:08CV142, 2008 WL 4223620 (E.D. Va. Sept. 11, 2008) (finding the rationale of the Eleventh Circuit in *Schwier* "persuasive").

On the other hand, Courts have been reticent to recognize a private right of action when the right in question is less fundamental and well recognized.  In direct opposition to *Schwier*,

the Ninth Circuit in *Dittman v. State of California*, 191 F.3d 1020 (9th Cir. 1999), refused to recognize a private right of action where the plaintiff, an acupuncturist, was denied the ability to renew his license without disclosure of his SSN.  Following the theme of licensure, the Southern District of New York held that a private right of action did not exist where the plaintiff refused to disclose his SSN in applying for a driver's license.  *Stoianoff*, 107 F. Supp. 2d. at 445.  In sum, this Court notes that while it need not be decided whether a private cause of action exists in this specific case, such a cause of action may lie in certain circumstances, depending on the fundamental nature of the right involved.

CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 23) is GRANTED.

A separate Order follows.

Dated:  July 3, 2014

Richard D. Bennett
United States District Judge